**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD THOMPSON, | Civil Action No. 13-4334 (MAS) (DEA) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| CHARLES WARREN, et al., | |
| Defendants. | |

**Shipp, District Judge**

Pro se Plaintiff Richard Thompson filed the instant Complaint pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights had been violated by Defendants. Presently before the Court is a motion for judgment on the pleadings and for summary judgment filed by Defendants Jimmy Barnes, Beatty, S. D'Amico, Dutch, D. Jimenez, E. Mendez, Kenneth Nelsen, D. Packard, and W. Sanderson ("Moving Defendants"), seeking final resolution on all claims against them ("Motion").[1] (ECF No. 102.) For the reasons stated below, the Court grants the Motion and dismisses the case.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

For the purposes of this Memorandum Opinion, the Court construes all facts alleged in the Amended Complaint (ECF No. 81) as true, and recites only the relevant facts herein. Plaintiff alleges that since September 3, 2008, he had been assigned to various jobs in his prison unit, Unit 2C, and had received excellent work evaluations. (Am. Compl. 9-10.) On March 25, 2013, he

---

[1] The other remaining defendants in this case, Defendants Charles Warren, Schmeila, J. Asianna, and C. Kirby, were never properly served. (*See* ECF Nos. 86 & 87.)

was reassigned to Unit 1-Left, and removed from his job assignment in Unit 2C. (*Id.* at 10.) According to the Amended Complaint, Unit 1-Left was an administrative segregation unit. (*Id.* at 11.) Plaintiff alleges that the reassignment was in direct retaliation for helping another inmate to file a § 1983 lawsuit against prison officials. (*Id.* at 10.) Plaintiff further alleges that:

> None of the cells in 1-Left are designed with any electrical outlets to allow for prisoners to have their appliances, there is no laundry service other than prisoners are allowed to turn in their sheets for clean ones. There is no laundry service for clean clothes, no recreation, no commissary privileges, no visits, and showers are only every three days so after a prisoner showers he has to put back on his same dirty clothes as before he showered. Prisoners are cuffed behind their backs each time they leave their cells for any reasons [sic].

(*Id.* at 11-12.) Plaintiff also alleges that various items of his personal property were collected and placed in the prison's property room, and he was denied access to the items for the duration of his stay in Unit 1-Left. (*Id.* at 15.) Plaintiff, however, concedes that he was released from Unit 1-Left on April 4, 2013, and reassigned to Unit 6-R, at which time his personal items were returned to him. (*Id.* at 16.) In short, Plaintiff spent a total of ten days in administrative segregation. Plaintiff also alleges that he was not allowed to continue his prior job assignment even after his release from administrative segregation. (*Id.* at 17.)

Based on the foregoing allegations, Plaintiff asserts that Defendants violated his: (1) First Amendment rights due to their alleged retaliatory actions for Plaintiff's assistance with another inmate's lawsuit; (2) Fourteenth Amendment rights by depriving him of the use of his personal property during his time in administrative segregation; and (3) Eighth Amendment rights based on unconstitutional conditions of confinement. Plaintiff also raises state law tort claims and alleges violation of the New Jersey Administrative Code, § 10A:5-6.23. (*Id.* at 18-20.)

## II.    STANDARD OF REVIEW

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The standard of review on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as on a motion under Rule 12(b)(6)—that is, the plaintiff must allege "sufficient factual matter, accepted as true [and viewed in the light most favorable to the plaintiff], to state a claim to relief that is plausible on its face." *Hlista v. Safeguard Props., LLC*, No. 15-1812, 2016 WL 2587986, at *1 n.4 (3d Cir. May 5, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The defendant bears the burden of showing that no claim has been presented. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

In determining the sufficiency of a pro se complaint, the Court must be mindful to accept its factual allegations as true, *see James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012), and to construe it liberally in favor of the plaintiff. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

## III. DISCUSSION

A plaintiff can pursue a cause of action under § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must establish, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-1 (1999); *Morrow v. Balaski*, 719 F.3d 160, 166-67 (3d Cir. 2013).

### A. First Amendment Claims

Plaintiff alleges that his First Amendment rights were violated when the defendants retaliated against him for his assistance with another inmate's lawsuit against prison officials. The Moving Defendants argue that Plaintiff has failed to state a claim because his legal assistance was not a constitutionally protected activity and, therefore, there can be no retaliatory claim alleged against them. The Court agrees with the Moving Defendants.

In *Shaw v. Murphy*, the Supreme Court held that "prisoners [do not] possess a First Amendment right to provide legal assistance [to other inmates] that enhances the protections otherwise available." 532 U.S. 223, 225 (2001). "We . . . decline to cloak the provision of legal assistance with any First Amendment protection above and beyond the protection normally accorded prisoners' speech." *Id.* at 231. Because § 1983 retaliatory claims require, as an element, that Plaintiff engaged in constitutionally protected conduct, Plaintiff's retaliatory claims under the

4

First Amendment must fail because his provision of legal assistance to another inmate was not constitutionally protected conduct. *See Considine v. Jagodinski*, No. 15-2184, 2016 WL 1459548, at *2 (3d Cir. Apr. 14, 2016) ("To state a claim for retaliation in violation of the First Amendment, a plaintiff must allege [that he was engaged in] constitutionally protected conduct.").

Plaintiff cites to *Taylor v. McSwain*, 335 F. App'x 32, 34 (11th Cir. 2009), for the proposition that prisoners have a right to "political affiliation," and interference with that right may result in a cognizable First Amendment claim. *Taylor*, in turn, relies on another Eleventh Circuit case, *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986), in finding such a right. As the *Adams* court explained:

> Litigation undertaken in good faith by a prisoner motivated to bring about social change and protect constitutional rights in the prison is a "form of political expression" and "political association" much as the Supreme Court has held litigation to be for certain organizations outside the prison setting. A properly stated first amendment claim by an inmate does not fail simply because the allegedly protected activities were conducted on behalf of others. The right of free expression is cherished for its force as an agent of social change and not only as a right of self-interested individuals.

*Id.* (citations omitted).

The Court declines to follow the rationale of the *Taylor* and *Adams* courts. As the Supreme Court noted, although there is no First Amendment right to provide legal assistance, an inmate providing legal assistance does not *lose* existing constitutional protections he already has. *See Shaw*, 532 U.S. at 232-33 (Ginsburg, J., concurring). Therefore, any alleged retaliatory actions taken by the defendants would be subject to other constitutional protections, which, as summarized above, Plaintiff has amply asserted here. To the extent such retaliatory actions may have a chilling effect on an inmate's ability to file lawsuits due to the loss of a competent legal aid, said inmate, whose legal rights were actually affected, already has standing to assert a claim that his right of access to the courts under the First Amendment was infringed upon. *See Johnson v. Avery*, 393

U.S. 483, 490 (1969). In other words, the inmate Plaintiff was assisting may have a legal claim against the defendants if his own lawsuit was materially affected by the defendants' alleged actions, but Plaintiff himself has no independent claim—implicit in *Shaw* is the recognition that existing constitutional protections are already adequate to safeguard against such actions by a prison official. Here, in light of *Shaw*, the Court is not inclined to adopt the expansion of First Amendment rights embraced by the Eleventh Circuit in *Taylor* and *Adams*. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1247 (9th Cir. 2013) (declining to recognize a prisoner's right to provide legal assistance under the political association doctrine in light of *Shaw*). As such, the Motion is granted on Plaintiff's First Amendment claims for failure to state a claim upon which relief may be granted.

### B. Fourteenth Amendment Claims

Next, Plaintiff alleges that his Fourteenth Amendment right to procedural due process was violated when the defendants confiscated his items of personal property during his ten-day administrative segregation. The Moving Defendants contend that Plaintiff has failed to state a claim because, based on the allegations in the Amended Complaint, Plaintiff's items of personal property were not damaged, stolen, or lost—indeed, Plaintiff concedes that his items of personal property were returned to him after he was released from administrative segregation. The Moving Defendants further contend that, to the extent Plaintiff has stated a cognizable deprivation of property claim, the claim still fails because an independent and adequate post-deprivation remedy was available to him. The Court agrees with the Moving Defendants.

"Intentional and negligent deprivations of property do not violate due process if meaningful post-deprivation remedies for the loss are available." *Pressley v. Huber*, 562 F. App'x 67, 69-70 (3d Cir. 2014). The Third Circuit has held that such meaningful post-deprivation remedies exist

in New Jersey. *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 139 (3d Cir. 2010). Thus, to the extent that Plaintiff has stated a facially valid claim for the ten-day deprivation of his items of personal property, there is no due process violation because a meaningful post-deprivation remedy was available to him.

Even if no such post-deprivation remedy existed, however, the Moving Defendants are correct that there was no deprivation because Plaintiff admits that his items of personal property were returned to him. *See Ibarra-Villalva v. USP-Allenwood*, 213 F. App'x 132, 135 (3d Cir. 2007) (finding the plaintiff's deprivation of personal property claim frivolous because "he has conceded that . . . his personal property has been returned"). Accordingly, the Motion is granted on Plaintiff's Fourteenth Amendment claims for failure to state a claim upon which relief may be granted.

## C. Eighth Amendment Claims

Next, Plaintiff asserts that his Eighth Amendment right to be free from unconstitutional conditions of confinement was violated due to the various prohibitions he was subjected to while in administrative segregation. In particular, Plaintiff highlights his inability to engage in outside, recreational activities. The Moving Defendants contend that Plaintiff's allegations have failed to establish a constitutional violation. The Court agrees with the Moving Defendants.

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). However, the Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

The Eighth Amendment prohibits conditions that unnecessarily and wantonly inflict pain, or are grossly disproportionate to the severity of the crime warranting imprisonment. *Rhodes*, 452 U.S. at 346-47. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." *Id.* at 346. "[I]t is well settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer*, 511 U.S. at 832. To determine whether the conditions of confinement violate the Eighth Amendment, courts employ a test that includes objective and subjective elements, both of which must be satisfied by the plaintiff. *See Counterman v. Warren Cty. Corr. Facility*, 176 F. App'x 234, 238 (3d Cir. 2006) (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001)).

A prisoner may satisfy the objective element of a conditions-of-confinement claim, that a deprivation be "sufficiently serious," if he can show that the conditions alleged, either "alone or in combination . . . deprive him of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347-48. Such necessities include: "adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992).

> The duration of an inmate's confinement, while not itself a controlling factor in Eighth Amendment analysis, nonetheless helps to gauge the cumulative burden of the deprivations that the inmate has endured. A relatively short exposure to harsh conditions is less onerous than a protracted exposure, and courts have, therefore, looked to the length, as well as the severity, of solitary confinement as one element of its constitutional validity.

*Rosario v. Williams*, No. 13-1945, 2014 WL 338114, at *7 (E.D. Pa. Jan. 29, 2014). The Third Circuit has held that administrative segregations much longer than what Plaintiff endured did not violate the Eighth Amendment. *Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (112 days); *Gibson v. Lynch*, 652 F.2d 348, 351-53 (3d Cir. 1981) (90 days).

8

The allegations in the Amended Complaint do not constitute, either individually or in combination, a deprivation of sufficient seriousness as required by *Rhodes* and *Farmer*. Here, Plaintiff did not allege that he was denied adequate food, clothing, shelter, sanitation, medical care, or personal safety. While Plaintiff alleges that there was no electrical outlet for personal appliances, he also alleges that he was not afforded the use of any personal property while in administrative segregation. The Court, therefore, is unclear as to how the presence of outlets would have made any difference. Regardless, Plaintiff cites no case law to support the proposition that the denial of personal appliances, the use of the laundry service, and the use of commissary services for only ten days constitutes the denial of life's necessities. *See, e.g., Liles v. Camden Cty. Dep't of Corr.*, 255 F. Supp. 2d 450, 461 (D.N.J. 2002) ("[L]aundry service is not one of the basic needs required under *Farmer*.").

With regard to Plaintiff's allegations that he was denied daily showers, visits, and recreational activities during his ten-day stay in administrative segregation, courts have held that such short-duration deprivations do not state valid claims under the Eighth Amendment. *Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (finding that the plaintiff "has not set forth facts demonstrating that the alleged denial of adequate showers and exercise during his brief [fifteen-day] stay" in administrative segregation, "was sufficiently serious to deprive him of the 'minimal civilized measure of life's necessities'"); *Nixon v. Zickefoose*, No. 10-0546, 2011 WL 53180, at *9 (D.N.J. Jan. 7, 2011) (finding the plaintiff's allegations of "no recreation, no microwaves, no television, no telephone, no visits, and no commissary" for twenty days insufficient to state a constitutional violation). Hence, the Motion is granted on Plaintiff's Eighth Amendment claims for failure to state a claim upon which relief may be granted.

### D. Other Claims

The parties have also construed the Amended Complaint as raising additional claims; namely, that the defendants' alleged actions deprived Plaintiff of either his property or liberty interests in (1) his cell assignment to Unit 2C, and (2) his job assignment while in Unit 2C. The Moving Defendants contend that no such property or liberty interest exists. The Court agrees with the Moving Defendants.

"[I]nmates have no constitutional right to be housed in a cell of their choosing." *Toussaint v. Good*, 276 F. App'x 122, 124 (3d Cir. 2008) (citing *Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995)). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Sheehan*, 51 F.3d at 1174 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). Thus, a prisoner has no constitutional right to remain in any prison unit. *Id.* ("[Prisoner] had no constitutional right to remain in Unit 3–C instead of Unit 2–R."). To the extent Plaintiff argues that his cell transfer was a retaliatory action for his provision of legal assistance, the Court already addressed that issue above, finding no retaliatory claim because Plaintiff was not engaged in constitutionally protected activity. *See also Toussaint*, 276 F. App'x at 124 ("[T]o the extent that [the inmate's] claim is based on 'false' misconducts that resulted in sixty-and ninety-day stays in [administrative segregation], such stays do not constitute an 'atypical and significant hardship' to trigger due process protections.") (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Likewise, "inmates have no right to a particular job assignment while they are incarcerated." *Williams v. Fed. Bureau of Prisons and Parole Comm'n*, 85 F. App'x 299, 305 (3d Cir. 2004) (citing *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989)). "Incarceration without

being assigned a job is within the sentence imposed upon [the] plaintiff[ ] and there is no indication that it is here otherwise violative of the Constitution." *James*, 866 F.2d at 629. Thus, "plaintiffs have no liberty interest in their . . . job assignments arising directly from the Due Process Clause itself." *Id.* Although a state regulation or statute may create a liberty or property interest in prison job assignments, *see id.* at 630, here, Plaintiff does not argue that any such regulation or statute has done so. Instead, in his opposition to the Motion, he again relies on his claim of retaliatory action (*see* Pl.'s Opp'n Br. 15, ECF No. 108-1), which the Court already rejected above. Accordingly, the Court finds that, with regard to claims arising out of his cell placement and loss of job assignment, Plaintiff has failed to state a claim upon which relief may be granted, and the Motion is granted on these claims.[2]

### E.   State Law Claims

Having dismissed all federal claims in the Amended Complaint, the Court now declines supplemental jurisdiction over Plaintiff's state law claims. Federal law permits a district court, within its discretion, to decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3). Indeed, the Third Circuit has used even stronger language to describe the Court's obligations under the provision: "The power of the [C]ourt to exercise pendent jurisdiction, though largely unrestricted, requires, at a minimum, a federal claim of sufficient substance to confer subject

---

[2] Because the Court has dismissed all federal claims against the Moving Defendants based on Plaintiff's failure to state a claim upon which relief may be granted, the Court also dismisses these claims against the unserved defendants pursuant to 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915A (On "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity . . . the court shall . . . dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted."). Moreover, because the Court has already dismissed all federal claims, the Court need not address the remaining arguments raised in the Motion.

11

matter jurisdiction on the [C]ourt." *City of Pittsburgh Comm'n on Human Relations v. Key Bank USA*, 163 F. App'x 163, 166 (3d Cir. 2006) (quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195 (3d Cir. 1976)). "[I]f it appears that all federal claims are subject to dismissal, the [C]ourt should not exercise jurisdiction over remaining claims unless 'extraordinary circumstances' exist." *Id.* "'[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Id.* (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)).

This case is still in its early stages, and the Court has dismissed all of Plaintiff's federal claims. Moreover, no extraordinary circumstances exist to compel the Court to exercise jurisdiction. The Court, therefore, declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the Court dismisses those claims without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Motion is GRANTED. All federal claims in the Amended Complaint are DISMISSED WITH PREJUDICE, *see Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002), all state law claims are DISMISSED WITHOUT PREJUDICE, and the Amended Complaint is DISMISSED. The Court shall issue an order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: December 9, 2016